Utica Mutual Insurance Company, Plaintiff, *v.* Valentine Hamera, Also Known as William Hammer, and Another, Defendants.

Supreme Court, Erie County, January 6, 1936.

*Babcock, Sullivan & Weaver* [*Philip A. Sullivan* of counsel], for the plaintiff.

*William L. Clay* [*Philip Halpern* of counsel], for the defendant Hamera.

Larkin, J. Plaintiff, for yearly periods beginning July 1, 1927, and ending July 1, 1931, wrote policies of employer's liability insurance in favor of defendant Niagara Foundry Company. Defendant Hamera, during that time, was an employee of the insured. The contracts of insurance were of the type known as

the standard form of workmen's compensation and employers' liability policy. So far as the determination of this case is concerned, the policies are identical. They read as follows:

" Utica Mutual Insurance Company of Utica, N. Y. (hereinafter called the Company), does hereby agree with this employer, named and described as such in the declaration forming a part thereof, as respects personal injuries sustained by employees, including death, at any time resulting therefrom, as follows:

" Paragraph 1—

" (A) This clause deals exclusively with claims under the Workmen's Compensation Act.

" (B) So far as applies to the present action, reads as follows: ' To indemnify this employer against loss by reason of the liability imposed upon him by law, for damages on account of such injuries to such of said employees as are legally employed, wherever such injuries may be sustained, within the territorial limits of the United States or the Dominion of Canada.'

" Paragraph 2—

" Deals only with the duty of insured to furnish proper inspection of the insured's plant.

" Paragraph 3—

" Covers the obligation of the insurer to defend claims brought against the insured.

" Paragraph 4—

" States the obligation of the insurer to pay costs of legal proceedings and investigation.

" Paragraph 5—

" Limits the agreement to employees of the insured whose entire remuneration is included in the total remuneration for which provision is made in the policy.

" Paragraph 6—

" Limits the coverage to such injuries as may be sustained by reason of the business operations described in the declaration made by the plaintiff for the purpose of obtaining the policy.

" Paragraph 7—

" The clause giving rise to this litigation is the concluding paragraph of the contract proper, and is as follows: ' This agreement shall apply only to such injuries so sustained by reason of accidents occurring during the policy period, limited and defined as such in item 2 of the declarations.' "

The foregoing, with certain conditions and the declaration, constitute each contract. Item 2 of the declaration merely states the time from which and to which the insurance runs.

In December, 1933, Hamera, who had been employed by the assured as a laborer in its foundry at Niagara Falls, N. Y., for approximately eight years, ending on or about February 12, 1931, brought an action in the Supreme Court of Niagara county against his former employer. The complaint therein alleges that, by reason of the master's negligence during the period of his employment, he contracted, though not by accident, silicosis. Since the contracts of insurance covered a part of the period of Hamera's employment, if the foundry company were negligent, plaintiff became obligated to pay Hamera any judgment he may obtain, provided the disease of silicosis falls within the coverage of its contracts with the foundry company, and is also required by them to defend this suit. Confronted with this threatened liability, the present action was brought by the insurance company against Hamera and the foundry company, in which, in substance, plaintiff asks a declaration that the personal injury alleged by Hamera is not covered by its policies.

Hamera, alone, has answered. The codefendant, the insured, has defaulted. Hamera denies the existence of a situation authorizing the court, in the exercise of its discretion, to make any declaration, and specifically, the plaintiff's right to the declaration claimed. Upon the pleadings the action came on for trial at a Special Term of this court. In addition to the contracts of insurance and Hamera's complaint, in the action brought by him against the insured, some oral testimony was given. At the beginning of the trial Hamera moved for a dismissal of the complaint because, on its face, he urged a situation was not present where the court should take jurisdiction for the purpose of construing the policies in question.

Whether jurisdiction of this action should be entertained, of course, rests in the discretion of the court. It presents a question not free from doubt. There is much force to Hamera's argument that his interest in these contracts is purely contingent and will not arise until he has obtained a judgment against the foundry company, which has been returned unsatisfied. His suggestion that at the present time the foundry company and the plaintiff, only, are interested in the policies, and that if the insurer desires an adjudication one could be had without joining him as defendant, is plausible. This is especially true in view of plaintiff's failure either to allege or prove the insolvency of the foundry company. Hamera's suggestion that the courts should not be oblivious to the fact that a practice, such as this plaintiff has adopted, imposes an added burden upon a plaintiff in a negligence case, especially one of the character which Hamera has brought, which, if it is expensive for the defendant to try, is equally as expensive for the

plaintiff, is appealing. Moreover, the very nature of this action makes it seem very much like asking the advice of the courts as to the present course of business conduct for parties to an obligation. If the question of jurisdiction, in a situation like the present, were an open one, I should be inclined to accept defendant's views. However, defendant's position seems foreclosed by the trend of decision, which is apparently toward a constant enlargement of this form of action. (*Post* v. *Metropolitan Casualty Ins. Co. of New York*, 227 App. Div. 156; affd., 254 N. Y. 541; *Utica Mutual Ins. Co.* v. *Glennie*, 132 Misc. 899; affd., 227 App. Div. 650; *Citizens Casualty Co. of New York* v. *Clark*, 245 id. 38.) Although in none, except the *Post* case, was the question of jurisdiction clearly presented, yet it appeared in every one of them and the basis for jurisdiction, as given in the *Post* case, is applicable to the present state of facts. Moreover, I believe that it must be conceded that if there is a dispute between plaintiff and the foundry company as to the interpretation of this policy, plaintiff had the right, now, to ask a declaration as to it, because of the obligation, under the contracts, to defend the suit. True, that, while plaintiff sets forth its policies with the foundry company, there is no specific allegation, nor proof, that the foundry company has ever called upon it to defend Hamera's suit. Nevertheless, I think enough appears to warrant the inference that the foundry company called upon plaintiff to defend Hamera's action against it, and that it looks to plaintiff to pay any judgment obtained therein. That presents a controversy. Ordinarily, in an action for a declaratory judgment, all persons interested in the declaration are necessary parties. (*Bach* v. *Grabfelder*, 233 App. Div. 773.) Viewed from that standpoint, it is entirely immaterial that Hamera's interest in these contracts is at present only contingent. He could and ought to be joined as a party defendant in this action, in order that the declaration may forever settle the rights of all parties interested, presently or contingently.

The sole question presented is whether the personal injury, silicosis, alleged to have been sustained by Hamera, through the negligence of the foundry company, is covered by the terms of the policies. Plaintiff insists that Hamera's claim is not covered for the following reasons:

" (1st.) That by paragraph 7, of each policy, only damages on account of injuries caused by accident are insured against;

" (2d.) That silicosis is not a personal injury as the result of an accident, but merely an occupational disease, which is quite different from injury by accident."

The position of the defendant Hamera is:

"(1st.) That paragraph 7, of each policy, was intended merely to fix its duration, and not to limit the coverage, and that the word 'accident,' as used therein, is synonymous with 'occurrence.'

"(2d.) That silicosis is an accidental injury;

"(3d.) That in any event, paragraph 7 is repugnant to the general insuring clause, which is a coverage against all personal injury, and therefore, other than for fixing the policy limit, must be disregarded;

"(4th.) That if plaintiff intended to limit the coverage by paragraph 7, that paragraph causes an ambiguity, in which event the ambiguity must be resolved against the insurer, in favor of the insured."

These respective contentions must be determined by an inspection of the policy itself, for the oral proof has little or no probative value. Examining the contract, it will be found to consist of a general insuring clause reading as follows: " Utica Mutual Insurance Company of Utica, N. Y. (hereinafter called the Company) does hereby agree with this employer, named and described as such in the Declaration forming a part hereof, as respects personal injuries sustained by employees, including death at any time resulting therefrom as follows:" Applying, then, the usual rule of construction, namely, that the entire agreement must be considered, and a construction adopted which will give effect to all of the provisions of the contract, where it is possible to do so, it follows that the general statement that the plaintiff agrees with the employer, etc., must be understood as being repeated at the beginning of each paragraph, condition and item, because they, together, constitute the contract. The seventh paragraph of the contract proper would then read as if written as follows: " Utica Mutual Insurance Company of Utica, N. Y. (hereinafter called the Company) does hereby agree with this employer * * * as respects personal injuries sustained by employees (so sustained by reason of accidents occurring during the policy period, limited and defined as such in item 2 of said Declarations)." If the whole contract is thus amplified, the policy is clarified just as effectually as if the insuring clause contained in it, after the words, " personal injuries sustained by employees," the words which give rise to this controversy, found in paragraph 7, " by reason of accidents." Nowhere, except in paragraph 7, in the entire contract is there any statement as to how the personal injuries must be sustained, or how the death must be caused, in order to bring them within the terms of the agreement. Had the introductory clause contained the words of paragraph 7, " by reason of accidents," it is doubtful if any question

as to its construction would have been considered as even plausible. Yet the only result of writing these words in the general insuring clause would have been to call attention to that particular limitation ahead of anything else. Such a course would not have changed the agreement, as a whole, one iota from what it is when amplified as above. Thus amplified, and read as a whole, the agreement points undubitably to " accident " and " injury therefrom " as the subjects around which it was built. Nowhere in the policy is there any wording which would lead one to suppose that the policies were written to cover sickness or disease of any kind, as, for example, an occupational disease, except, it is true, paragraph 1-a, which covers the liability by reason of the Workmen's Compensation Law, and which, in turn, includes certain occupational diseases. Moreover, the fact that the word " accident " is repeatedly used in conditions D, F and H, and, clearly, there used in the sense it is employed in policies of accident insurance, tends strongly to corroborate the belief that the policy was never intended, by the coverage of paragraph 1-b, to include occupational diseases. When so read the policy, as an entirety, discloses no ambiguity, nor any repugnancy between the general insuring clause and paragraph 7.

The fact that the coverage provided in paragraph 1-a is for certain occupational diseases, as well as accidents, does not make uncertain the meaning of the word " accident " in the seventh paragraph. It is true that the seventh paragraph must apply both to subdivision 1-b, as well as 1-a. However, it must be borne in mind that our Workmen's Compensation Law makes the contraction of an occupational disease an accident, within the meaning of the statute. In that respect our statute differs from that found in States like Massachusetts, where compensation for injury is not limited to accidental injury. (*Hurle's Case,* 217 Mass. 223; 104 N. E. 336; *Johnson's Case,* 217 Mass. 388; 104 N. E. 735.) The agreements under consideration are New York contracts and must be construed in accordance with our act and our decisions. (*Barrencotto* v. *Cocker Saw Co.,* 266 N. Y. 139.) Therefore, the draftsman of these policies did not, in order to make it apply to a and b of paragraph 1, have to use the word " accident " as synonymous with " occurrence," as would have been the situation had our Workmen's Compensation Law covered all injuries sustained in the course of the employment. Since, by statute, the contraction of an occupational disease is defined as an " accident," the use of the word, in the sense it is ordinarily understood in contracts of liability insurance, was justified, because it fitted the coverage for both subdivisions of paragraph 1. Under such circumstances there

is not much in the argument that the word " accident " was used loosely in paragraph 7, as meaning " occurrence." Such inadvertence or ineptitude of language is rarely found in standard forms of insurance policies.

Neither is there any force in defendant's contention that paragraph 7 is a mere time limit. It is difficult to see, if that be the only purpose, its necessity. The policy period is fixed by item 2 of the declaration, which, by the general insuring clause, is made a part of the contract. Moreover, if this view be accepted, it is again difficult to understand why it was necessary to use the words " by reason of accident." The clause would have been just as effectual, for the purpose of a time limit, if these particular words had been eliminated. Their presence can only be accounted for by ascribing to the draftsman a carelessness in diction. This, in effect, would be making an ambiguity where none now exists, if the words be given their plain meaning.

At first blush the argument that silicosis is a personal injury sustained by accident, would seem to have merit, but that argument is foreclosed by the authorities. It is true that in Massachusetts certain occupational diseases have been treated as accidents, and made compensable under the compensation statute of that State. However, it must not be forgotten that the court there was dealing with a statute which imposed liability for every personal injury which arose out of or in the course of the employment. That these Massachusetts decisions can have no weight in the construction of this policy is made evident by the decision — *Barrencotto* v. *Cocker Saw Co. (supra)*. In that case a construction of our Workmen's Compensation Law, to include the very occupational disease from which Hamera alleges he is suffering, was sought. Surely there would be more reason to give a broad construction to such a statute, having in mind its beneficent purpose, than to a mere insurance contract. Nevertheless it was there held that silicosis was not the result of an accident within the meaning of the act. That decision is in accord with the views of that court on the subject of disease as an accident, as found in *Matter of Jeffreyes* v. *Sager Co.* (233 N. Y. 535); *Matter of Lerner* v. *Rump Bros.* (241 id. 153); *Jackson* v. *Employers' Liability Assurance Corp.* (139 Misc. 686; affd., 234 App. Div. 893; affd., 259 N. Y. 559). Defendant's authorities from other jurisdictions were all cases involving insurance policies covering accidental injuries. In all of them the facts were such that the court held the disease to have been accidentally contracted, and so, that it fell within the coverage of accidental injuries. No such element is present in this case. Undoubtedly the same causes would have been

decided the same way in this State. (*Matter of Connelly* v. *Hunt Furniture Co.*, 240 N. Y. 83.)

Even assuming that the evidence given by defendant, of the subsequent conduct of the company in exacting a higher premium for coverage for all occupational diseases, was competent, I fail to see how its adds anything to his argument. The claim that it demonstrates an ambiguity is untenable. It can just as well be urged, for this evidence, that it shows conclusively that there never was any intention under paragraph 1-b, to cover occupational diseases. Otherwise, why the additional premium? Concededly, if no ambiguity exists without the oral proof, it cannot be used to make one. It may well be that, as a matter of policy, to eliminate farfetched claims of construction, and to give coverage for occupational diseases, the subsequent riders were attached. An entirely different question would be presented had there been proof of a usage among underwriters, using the form of policy herein considered, to interpret 1-b, despite paragraph 7, as including occupational diseases. (*Underwood* v. *Greenwich Ins. Co.*, 161 N. Y. 413.) Then this proof as to the subsequent riders would, seemingly, not only be competent, reasonable, but cogent. Without such evidence, not only is there a serious doubt as to its competency, but, even if admissible, its force is practically nil.

From the foregoing it is evident that defendant's position as to the construction of these policies is untenable. Frankly, however, the question is a close one. It may well be that these very policies were issued, sold and interpreted in the trade as covering all occupational diseases, and that the true interpretation of them is that they intend to protect against damages for (1) personal injuries sustained by " accident " as the word is generally used in liability policies, and as it is defined in our Workmen's Compensation Law; and (2) all other personal injuries sustained by the employee under circumstances which impose liability upon the employer. It is only upon that theory that defendant's position can be upheld. Yet, the record is barren of any extrinsic proof warranting this construction. If such a usage prevailed in the trade, there is no proof of it. To decide the case upon that theory would be to make a new contract, and to give to words a meaning which would not be warranted, except by such extrinsic proof. The following quotation from *Hawkeye Commercial Men's Assn.* v. *Christy* ([C. C. A.] 294 Fed. 208, 213) is applicable: " The natural, obvious meaning of the provisions of a contract should be preferred to any curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover." Therefore, looking at the contract as a whole, I have reached the conclusion that the

general insuring clause is limited by the provisions of paragraph 7; that there is no repugnancy between it and the first clause, and no ambiguity in the contract. For that reason plaintiff is entitled to a declaration that the personal injury alleged by Hamera, in his action against his codefendant, the Niagara Foundry Company, namely, the disease of silicosis, is not covered by the policies. This construction is in accord with *United States Radium Corporation* v. *Globe Indemnity Co.* (13 N. J. Misc. 316; 178 A. 271) and *Belleville Enameling & Stamping Co.* v. *United States Casualty Co.* (266 Ill. App. 586; certiorari denied, 266 Ill. App. xv).

Decision may be submitted for signature.