WILLIAM SOUKUP v. THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., of London, England, a Corporation, Garnishee of SCOTT FORD, Doing Business as SCOTT FORD BATTERY COMPANY, Appellant.—108 S. W. (2d) 86.

Court en Banc, July 30, 1937.

TIPTON, J., dissenting with whom LEEDY, J., concurs.

*James R. Sullivan, Arthur R. Wolfe, Bishop & Claiborne* and *George E. Heneghan* for appellant.

618

*Douglas H. Jones* and *J. R. Vettori* for respondent.

*Boyle & Priest, Geo. T. Priest, Robt. E. Moloney* and *C. S. Cullenbine* for National Pigments & Chemical Company *amicus curiae.*

*Jacob M. Lashly* for Hartford Accident & Indemnity Company *amicus curiae.*

*Leahy, Walther, Hecker & Ely* for Blanke-Baer Extract & Preserving Company *amicus curiae.*

*Lewis, Rice, Tucker, Allen & Chubb* for Beehler Steel Products Company *amicus curiae.*

*Igoe Carroll & Keefe* for Meier & Pohlmann Furniture Company *amicus curiae.*

HAYS, C. J.—This is a garnishment proceeding, instituted to collect a judgment of $15,000, obtained by the respondent against the judgment defendant, Scott Ford, doing business as Scott Ford Battery Company. The trial court directed a verdict in favor of the respondent and against the appellant. Appellant has appealed from the judgment entered on this verdict.

The parties herein are mutually bound by the issues adjudicated by said judgment (by default) recovered against Ford. [Dolph v. Maryland Casualty Company, 308 Mo. 534, 1. c. 546, 261 S. W. 330.] The petition in which alone the issues were formulated and upon which said judgment was founded, alleges, among other things, that the plaintiff was employed by Ford from May 15, 1930, until December 30, 1931, and that the plaintiff in the work of his employment contracted the disease of lead poisoning, from which he suffered partial paralysis, on account of the negligence of Ford—negligence in many particulars specified in said petition—arising out of his violation of the duties incumbent upon him as employer to furnish specified contrivances and a reasonably safe and healthful establishment or place for plaintiff and other employees to work in, as provided by the statutes pertaining to the health and safety of employees. [R. S. 1929, secs. 13234 and 13252 to 13255, incl.] Particularly applicable among the statutes is Section 13253, which in effect declares that the handling of or contact with lead and its derivatives as involved in the labor of processing, in harmful quanti-

ties or under harmful conditions (as appeared in the case at bar), is especially dangerous to the health of the employees. ■ The violation of such statutes by an employer constitutes actionable negligence. [Dodd v. Stove & Furnace Co., 330 Mo. 662, 670, 51 S. W. (2d) 114.]

■ The appellant contends that plaintiff's condition was not caused by accident within the meaning of that term as used in the two policies of insurance in suit and hence not within the coverage thereof; wherefore appellant was entitled to a directed verdict. The respondent seeks to uphold the action of the trial court upon the theory that the policies were to indemnify said Ford for loss sustained by any employee under the Workmen's Compensation Laws and also indemnify said employer's loss by reason of the liability imposed upon him by law for damages on account of personal injuries sustained by respondent, during the period of his employment, as the result of his employer's negligence.

The essential provisions of the policies are as follows:

"The Employers' Liability Assurance Corporation, Limited, of London, England (hereinafter called the Corporation), does hereby agree with this employer, named and described as such in the declarations forming a part hereof, as respects personal injuries sustained by employees, including death at any time resulting therefrom as follows:

"One (a) To pay promptly to any person entitled thereto under the Workmen's Compensation Law and in the manner therein provided. . . .

"One (b) To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada. . . .

"Two. To serve this employer (a) by the inspection of work places covered by the policy . . . and, (b) upon notice of such injuries, by investigation thereof and by settlement of any resulting claims in accordance with law.

"Three. To defend, in the name and on behalf of this employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries. . . .

"Four to pay all costs taxed against this employer in any legal proceeding defended by the Corporation. . . .

"Five. This agreement shall apply to such injuries sustained by any person or persons employed by this employer whose entire remuneration shall be included in the total actual remuneration for which provision is hereinafter made, upon which remuneration the premium for this policy is to be computed and adjusted, and, also

to such injuries so sustained by the President, any Vice President, Secretary or Treasurer of this employer, if a corporation. The remuneration of any such designated officer shall not be subjected to a premium charge unless he is actually performing such duties as are ordinarily undertaken by a superintendent, foreman or workman.

"Six. This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said declarations or eleswhere in connection with, or in relation to, such work places.

"Seven. This agreement shall apply only to such injuries so sustained by reason of accidents occuring during the policy period limited and defined as such in item 2 of said declarations."

"Item 2" of the declarations is as follows: "The period during which the policy shall remain in force, unless canceled as in the policy provided (herein called the policy period) shall be from May 20, 1931, to May 20, 1932, at twelve and one minute o'clock A. M., standard time, as to each of said dates at the place where any operation covered hereby is conducted, as respects that operation, or at the place where any injury covered hereby is sustained, as respects that injury."

During the period the respondent was in the employ of the judgment defendant, Ford, the Workmen's Compensation Law did not give compensation for occupational disease in any form, and, as already shown, the respondent's action was not brought thereunder.

The appellant contends that lead poisoning is an occupational disease; that the policy covers only injuries caused by accident and that the term accident as used in the policies means accident as defined in that law; that the statutory definition thereof, as follows, is identical with the definition at common law: "Accident" means "an unexpected or unforeseen event happening suddenly and violently with or without human fault and producing at the time objective symptoms of an injury." [R. S. 1929, sec. 3305, subdiv. (b).] The conclusion, in effect, is urged that as the event in question did not so happen and was not so immediately productive, therefore the respondent's injury was not an accident within the meaning of the law and the policies. Cited by appellant in support are Belleville Enameling & Stamping Co. v. U. S. Casualty Co., 226 Ill. App. 586; U. S. Radium Corp. v. Globe Indemnity et al. (N. Y. Sup. Ct.), 178 Atl. 271, affirmed by New Jersey Court of Errors and Appeals 182 Atl. 626; Utica Mutual Ins. Co. v. Hamera et al., 292 N. Y. Supp. 811.

Another member of this court has taken occasion to analyze those cases and we shall adopt and set out such analysis literally in the main, though without quotation marks. That will be done after first quoting—as now follows—the Workmen's Compensation Act's definition of the term that is coupled with "accident" as there defined: "The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom." This shows that said act makes these terms correlative as well as definitive, and the nature of the one is dependent upon the nature of the other. So, too, Clause One (a) of the policy expressly limits the nature of the accidents and of the personal injuries to such as are thus defined, correlated and fixed by the compensation law. For a subsection (not above set out) of said Clause One (a) expressly makes that act a part of the contract "as fully and completely as if written therein." Of course, that pointed language applies clearly and particularly to said Clause One (a). But whether the above definitions of those correlatives apply to the coverage liability of the employer, in an action brought under Clause One (b) of the policy, remains as the paramount question for determination.

Now follows the case analysis mentioned above.

Belleville Enameling & Stamping Co., in considering policies identical with the policies under consideration, ruled that occupational diseases were not covered by the policies. The meaning of the word "accident" was neither considered nor discussed. It is a short opinion by an inferior appellate court which moved on the line of least resistance to a disposition of the case.

U. S. Radium Corporation involved four indemnity policies as follows: One Globe Indemnity Company, two New Amsterdam Casualty Company, and one Aetna Life Insurance Company. The general insuring clauses of the Globe and New Amsterdam companies indemnified against loss from liability imposed upon the insured for personal injuries "accidentally" suffered during the policy period. In the general insuring Clause One (b) presented for our consideration there is no reference to "accidental" injuries. The Aetna policy is identical with the policies before us. The court ruled that the policies did not cover occupational diseases. Again, the meaning of the word "accident" was neither considered nor discussed. Furthermore, the opinion relies on Belleville Enameling & Stamping Co. v. U. S. Casualty Co., supra, and decisions determining the meaning of the word "accident" as used in the compensation law.

Utica Mutual Insurance Company, by an inferior appellate court, ruled that a policy identical with the policy under consideration did not cover occupational diseases. Again, the meaning of the word "accident" was neither considered nor discussed. Furthermore, that

624

decision also relies on decisions determining the meaning of the word as used in the compensation law.

Those decisions do not, nor does the appellant, give heed or attach any significance to the important phrase ''personal injuries'' iterated and reiterated in the policies, other than to assume that it is used in one and the same sense throughout and as thus used it connotes accident in the sense attributed to ''accident'' in the compensation law—possibly under the merely ancillary rule of construction that a term repeatedly used in a written document may be presumed to have been used in the same sense, unless a proper consideration of the context or the document in its entirety otherwise may determine. We are of opinion that such employment of the term ''personal injuries'' presents an ambiguity requiring a legal construction of the policies.

A brief analysis along this line should not be amiss. It is obvious that ''Clause One (a)'' is an insuring clause, the only insuring clause in the policies. Under the compensation act the respondent, as employee, had a direct interest in the insurance coverage, the benefit of which inured directly to him and his dependents and was enforceable by him through a direct proceeding cognizable only by the compensation commission and arising out of an ''accident'' resulting in ''personal injuries.'' The preceding discussion will have been borne in mind. In the light of that discussion let us briefly examine what precedes Clause One (a) and next Clause One (b), which is obviously an express indemnity clause.

In the beginning the policies state that the insurance company ''does hereby agree with the employer . . . as respects personal injuries (obviously any and all) sustained by employees (also obviously any and all).''

Next comes Clause One (a) which begins with the words: ''To pay promptly. . . .''

Then comes Clause One (b) which reads as follows:

''One (b). To indemnify this employer against loss by reason of the liability imposed upon him by loss for damages on account of such (personal) injuries to such employees as are legally employed. . . .''

Thus, down to this point the term ''personal injuries'' has been employed three times: Broadly and all-inclusively in the first instance and limitedly in the second and third; in the second in the much limited statutory sense; in the third in an obviously broader and more inclusive meaning than as used next before. Let us see what is this meaning, if it is not the one purposely narrowed and fixed by statute for observance only in proceedings under the compensation law.

Definitions are plentiful but we shall employ only a few. ''Personal injuries,'' in a contract of insurance, means bodily injuries (6

Words & Phrases, First Series, p. 5340). The words "personal injuries" as defined by lexicographers, jurists and textwriters and by common acceptance, denote an injury either to the physical body of a person or to the reputation of a person, or to both (3 Words & Phrases, Fourth Series, p. 90).

So, also, what has been said above in respect of correlation between "personal injuries" and "accident" as employed in the compensation act and in Clause One (a) herein, inevitably points to the conclusion that a like correlation exists between the term "accident" wherever specifically mentioned in the policies as a modifier of "personal injuries," and this latter term as employed in Clause One (b). For if accident has any relation or application more restricted than that connoted by the general definition just above given of "personal injuries," then there could be no such correlation and said Clause One (b) would be nullified. Therefore, we construe "accident," as applied to respondent's injuries, in the broader sense and as correlative to "personal injuries" in the broad sense defined above.

In Updike Inv. Co. v. Employer's Liability Assur. Corp. (Neb.), 270 N. W. 107, 109, a girl recovered damages on the ground that "she was required to work in a place which subjected her to cold drafts of air that impaired her health and caused the injuries of which she complained." In that case the meaning of the word "accident" in an identical policy was ruled as follows:

"The term 'accident' has many meanings, and when used in a contract of indemnity insurance, unless otherwise stipulated, it should be given the construction most favorable to the insured. It is true that, generally, accident insurance policies provide for risks only where the insured suffers an accidental injury by external violent means. There is in the policy in question no attempt to define the term 'accident.' Consequently, the meaning of the word most favorable to the insured should be accepted.

"In Chapin v. Ocean Accident & Guarantee Corporation, 96 Neb. 213, at page 217, 147 N. W. 465, 52 L. R. A. (N. S.) 227, it was said: 'The word "accident" is susceptible of and has received many definitions, varying with the connection in which it is used. It is: 'An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event; chance; contingency; often an undesigned and unforeseen occurrence of a afflictive or unfortunate character; casualty, mishap.' This definition is quoted from Webster's New International Dictionary. In the opinion it was further said: 'As used in an indemnity policy such as this, we are of the opinion that the word 'accident' means an undesigned and unforeseen occurrence of an afflictive or unfortunate character, resulting in bodily injury to a person other than the insured.'"

It is susceptible of being given such scope that one would hardly venture to define its boundaries. [Bystrom Bros. v. Jacobs, 162 Wis. 180, 155. N. W. 919, 920, L. R. A. 1916D, 966.]

In Columbia Paper Stock Company v. Fidelity & Casualty Company, 104 Mo. App. 157, 78 S. W. 320, a kidney disease contracted by an employee by handling infected rags for her employer was held to be an injury accidentally suffered, within the terms of an employers' liability policy. In that case in ruling against the contention put forward that a disease produced by a known cause could not be accidental, such as dropsy (as there) by the absorption of poison consequent on handling infected paper or rags in the course of employment is not covered by the policy, the court referred to the well-settled rule:

"In the interpretation of a policy . . . . it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity, which in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted."

[See, also, State ex rel. Security Insurance Co. v. Allen et al., 305 Mo. 607, l. c. 614, 267 S. W. 379.] The reason of the rule is, "The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it. [Mutual Life Ins. Co. of N. Y. v. Hurni Packing Co., 263 U. S. 167, 175.]

So, in view of the foregoing considerations, it cannot correctly be contended, though appellant does so contend, that the policies in question are free from ambiguity.

Our attention is particularly directed to certain other clauses of the policies in the consideration which we necessarily give to the policies as a whole, the appellant regarding the other clauses as being upon a par in importance with what we have denominated the insuring and indemnity clauses, though in fact and by their nature these last named, in our view, constitute the policies' reason for existence. The other clauses mostly are incidental to Clauses One (a) and One (b). The first of them, Two, authorizing inspection to reduce injuries; next creating additional burdens on the insurer, as in Clauses Three and Four; explanatory, as in Five and Six; the Seventh, upon which appellant chiefly relies, is said to contain limitations upon both the policy period and Clause One (b) in controversy. It is to be noted that in each and all of these, as in every preceding part of the policies, the word injuries is found—still without express definition, in any instance, until we reach Clause Seven, where, also for the first time, the word accident occurs, thus:

"Seven. This agreement shall apply only to such injuries so

sustained (in the employer's business operations described, or incident or appurtenant thereto or connected therewith) by reason of accidents occurring during the policy period limited and defined in item 2 of the declarations." May 20, 1931, to May 20, 1932.

Indisputably, respondent's injury was sustained, i. e., suffered, within that period. Irrefutably, we think upon consideration of the policies as a whole, said personal injuries resulting from accident came within Clause One (a) or Clause One (b) according as the injuries were, on the one hand, of the particular nature and the product of accident, as those two terms are defined in the Workmen's Compensation Act; or, on the other hand, as the injuries suffered were the result of the employer's negligence and were within the scope and broader definitions of "accident" and "personal injuries" as quoted or given hereinabove.

Clearly, upon this record said Clause Seven is applicable to and restrictive of Clause One (b) in so far only as it fixes the limits of the policy period, while it is wholly applicable to Clause One (a).

Likewise, provisions in respect of notice of accidents to be given the insurer, which provisions the appellant's counsel argues are applicable to Clause One (b), logically pertain and apply only to Clause One (a), which embraced sudden or precipitant violent accidents producing objective symptoms of an injury. The injury was of such character as not to afford a reasonable ground for thinking it might, before its observable development, support a claim for damages against the employer. "In such case" as was said in National Paper Box Co. v. Aetna Life Ins. Co., 170 Mo. App. 361, 367, 156 S. W. 740, and approvingly quoted in Chapin v. Ocean Accident & Guarantee Corp., supra (1. c. 467), "we think the assured would not be required, under the reasonable rule of construction we are discussing, to give the assurer notice until such time as the facts of the injury and its progress began to suggest to a person of reasonable care and prudence that a possible liability of the assured to answer in damages lurked in them. . . . Frequently an injury, apparently too trivial to cause any damage or inconvenience, develops into a most serious phase. The duty of the assured in such instances with respect to giving notice is performed if he gives notice within a reasonable time after the injury first takes on a serious aspect, an aspect suggestive of a possible claim for damages." [See, also, Columbia Paper Stock Co. v. Fidelity & Casualty Co., supra.] That such notice was so given of the injury in question was shown and not disputed.

In arriving at the foregoing conclusions we have, after considering the policies as a whole and in all their parts, sought to ascertain what was the main purpose or object of the parties to the contracts in making them and to effectuate their intention by the ap-

plication of settled legal principles of interpretation, in substance, viz.: No substantive clause should be allowed to perish by construction unless unsurmountable obstacles stand in the way of any other course; looking to the instrument as a whole, courts should give such construction that each clause will have some effect and perform some office; seeming contradictions must be harmonized, if that course is possible; a construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent (6 R. C. L., p. 835).

From all the considerations foregoing it results that the judgment is affirmed. *Douglas, J.,* not sitting; *Ellison, Frank* and *Gantt, JJ.,* concur; *Leedy, J.,* dissents; *Tipton, J.,* dissents in separate opinion to be filed.

TIPTON, J. (dissenting).—I am unable to agree with the majority opinion and deem it expedient to express my views on this case.

■ Do these policies cover an occupational disease contracted by an employee of the defendant? "The construction of insurance contracts are governed by the same general rules as are applied to the construction of other written contracts. 'The function of the courts is to construe them, not to make them.' " [Henderson v. Mass. Bonding & Ins. Co., 337 Mo. 1, 84 S. W. (2d) 922, l. c. 924.] Where possible, it is our duty to give every clause of the policy some meaning. Clause Seven is as follows:

■ "This agreement shall apply only to such injuries so sustained by reason of accidents occuring during the Policy Period, limited and defined as such in Item 2 of said Declarations."

This clause, standing alone, clearly limits the liability of the appellant to injuries caused by accident, and does not cover occupational diseases. ■ The majority opinion agrees with the contention of the respondent that the insuring clause is limited to Clause One (a), which deals with liability under the Workmen's Compensation Act, and One (b), which indemnifies the employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed, and as Clause Seven intends to limit the prior coverage, it should not be permitted because the same appears in an after-clause which is repugnant to the general insuring clause. There is no doubt that this is a rule of law in this State. [Jackson v. Order of the United Commercial Travelers, 89 S. W. (2d) 536; Caine v. Physicians' Indemnity Co., 45 S. W. (2d) 904.]

■ To my mind, Clause Seven is as much a part of the insuring clause as Clauses One (a) and One (b). A reading of the policy shows that it clearly and unambiguously states that the Employers'

Liability Assurance Corporation "does hereby agree with the employer . . . as respects personal injuries sustained by employees, including death at any time resulting therefrom as follows:"

One (a)—Workmen's Compensation liability.

One (b)—Damages imposed by law on account of personal injuries to employee.

Two—Inspection of the work places.

Three—Appellant agrees to defend any suit brought against the employer (insured).

Four—Appellant will pay all costs taxed in any legal proceeding.

Five—Employees covered.

Six—Limits the coverage to such injuries as may be sustained by business operators described in the declaration made by the employer for the purpose of obtaining the policy.

Seven—Limits the coverage to such personal injuries caused by an accident.

I think all seven of these paragraphs constitute the insuring agreement. If this is not true, then the appellant would not be obligated to defend any action brought against the insured or pay the cost of the lawsuit.

The majority opinion states that there is an ambiguity between Clause One (b) and Clause Seven, therefore, the policy should be construed strictly against the insurer and liberally in favor of the insured. It is a well-established rule of law that when the meaning of a policy is doubtful or susceptible to different constructions, the policy shall be strictly construed against the insurer and liberally in favor of the insured. [Henderson v. Mass. Bonding Co., supra; Bank v. American Bonding Co., 89 S. W. (2d) 554; Matthews v. Modern Woodmen, 236 Mo. 326, 139 S. W. 151.]

"In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. *The contract should be construed as a whole;* but, in so far as open to different constructions, that most favorable to the insured must be adopted. [State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614 et seq., 267 S. W. 379, 381, 382.] However, as said in 14 Ruling Case Law, section 103, page 931, *the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none evists. . . .*" [Wendorff v. Mo. State Life Ins. Co., 318 Mo. 363, 1 S. W. (2d) 99, l. c. 101.] (Italics ours.)

Taking the insuring clause as a whole, I see no ambiguity between Clause Seven and Clause One. Clause One (a) deals with an injury to an employee that would entitle him to come under the Workmen's Compensation Act. Certainly, the employee would not be entitled

to the benefits of the Workmen's Compensation Act if he were not injured by an accident. Therefore, there could be no ambiguity between Clause Seven and Clause One (a); nor do I see any ambiguity between Clause Seven and Clause One (b).

The majority opinion creates an ambiguity by giving the word "accident" two different meanings. I agree that this word has many different definitions, but when it is used only once it must have been used with only one meaning in mind, and that meaning should be applied to both Clause One (a) and Clause One (b).

The word "accident," when used in connection with Clause One (a), must mean what the majority opinion denominates as the common-law definition, which is the same as the statutory definition. The word "accident" is defined in the statutes as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the same time objective symptoms of an injury." [R. S. 1929, sec. 3305, subdiv. (b).]

First, it is necessary to use this definition to determine if the injury that the insured's employee received is one under the Workmen's Compensation Act, or is one under common law or statutory negligence; that is, to determine if the personal injury that the employee received comes under One (a) or One (b) of these policies. If the appellant can be "hooked" under the statutory definition, then the majority opinion would use that definition and say liability was under Clause One (a); however, if that definition is not broad enough to create liability under the new policy, then a broader meaning of the word would be used.

I think the word "accident" should be given only one meaning; in so doing, the policy is free from ambiguity. To use the definition of the majority opinion creates an ambiguity where none exists.

I, therefore, think that the judgment of the circuit court should be reversed.