971 F.Supp. 1301 (1997)
CITIZENS BANK OF NEWBURG, Plaintiff,
v.
KANSAS BANKERS SURETY COMPANY, Defendant.
No. 4:96 CV 01111 SNL.
United States District Court, E.D. Missouri, Eastern Division.
August 11, 1997.
*1302 Howard B. Becker, Dan L. Birdsong, Thomas and Birdsong, Rolla, MO, for Citizens Bank of Newburg.
David W. White, Alan V. Johnson, Sloan and Listrom, Overland Park, KS, for Kansas Bankers Surety Co.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court on the Defendant's Motion for Summary Judgment (# 27). Also pending is the Plaintiff's Motion for Summary Judgment on the Defendant's Counterclaim (# 26). The underlying diversity action involves an interpretation of a Financial Institution Crime Bond issued by the Defendant.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to *1303 allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).
As noted above, the issues in this case center around a Financial Institution Crime Bond ("the Bond") issued by the Defendant in favor of the Plaintiff for the period July 31, 1995 through July 31, 1996.[1] The Bond insured the Plaintiff for certain losses including loss of property resulting from theft, false pretenses, forgeries and counterfeit documents. It also had a limitation of liability provision which limited the Defendant's liability to a specified amount for each "Single Loss."
The Bond defines "Single Loss" as:
... all covered loss, including court costs and attorneys' fees incurred by the Underwriter under General Agreement (F), resulting from
(a) any one act or series of related acts of burglary, robbery or attempt thereat, in which no Employee is implicated, or
(b) any one act or a series of related unintentional or negligent acts or omissions on the part of any person (whether an Employee or not) resulting in damage to or destruction or misplacement of Property, or
(c) all acts or omissions other than those specified in (a) or (b) preceding, caused by any person (whether an Employee or not) or in which such person is implicated, or (d) any one casualty or event not specified in (a), (b) or (c) preceding.
Evidently, one of the Plaintiff's customers owned and operated a mobile home dealership. The Plaintiff had floor planned this business since 1956. Pursuant to this floor plan arrangement, the customer could obtain loans for his mobile homes by pledging their titles or certificates of origin as security. When he was able to pay off a loan, he would present the Plaintiff with a check for the payoff amount and receive the titles or certificates of origin back. Although all of the transactions were made pursuant to the floor plan arrangement, each loan involved separate and independent loan documents.
Prior to 1994, the floor plan arrangement had not presented any problems. On February 22, 1996, however, the Plaintiff became suspicious that one of the certificates of origin submitted by the customer was not an original. Upon further investigation, the Plaintiff discovered that the customer had submitted counterfeit certificates of origin in connection with forty-six mobile homes between 1994 and 1996. The original certificates had all been pledged to other lenders.
Neither the customer nor the mobile home dealership has any assets from which the Plaintiff can collect on these loans. In fact, the mobile home dealership has since gone out of business. Accordingly, the Plaintiff tendered forty-six proofs of loss, totalling $1,000,000.00, to the Defendant for payment under the Bond.
The Defendant agrees; that the losses are covered under the Bond,[2] but maintains that its obligation is limited to $100,000.00 pursuant to the Bond's "Single Loss" limitation of liability provision and Item 4 of the Bond's *1304 Declarations. It argues that the customer's counterfeit scheme falls within section (c) of the "Single Loss" definition because it was perpetrated by one individual. This provision, it explains, was negotiated to provide less protection when losses are caused by only one person because such losses are presumably easier to detect. The Defendant further explains that the Plaintiff could have purchased a greater amount of coverage. Nevertheless, pursuant to Item 4 of the Bond's Declarations, the Defendant is only obligated for $100,000.00 per "Single Loss" arising under Insuring Agreement E. Accordingly, since the Defendant has paid $100,000.00 under the Bond, it maintains that it has satisfied its obligations.
The Plaintiff argues that the "Single Loss" limitation, by its own terms, only applies to General Agreement F. Accordingly, it contends that the provision is inapplicable to claims arising under Insuring Agreement E. Alternatively, it argues that the language used in section (c) of the Bond's "Single Loss" definition is ambiguous. It denies negotiating for less protection when losses are caused by only one person and contends that "all acts and omissions" as used in the definition could reasonably be interpreted as all acts or omissions in each separate transaction. It equates "Single Loss" with "Single Event," such that each "Single Event" triggers a separate and distinct "Single Loss."
The Plaintiff's first argument is unavailing. A plain reading of the provision indicates that it applies to all of the Insuring Agreements. The reference to General Agreement F is merely demonstrative of the types of losses which may be covered. Moreover, considering the substantive difference between the Bond's Insuring Agreements and General Agreements, the Plaintiff's reliance on the mention of General Agreement F in the "Single Loss" definition is even less persuasive.
The Plaintiff's second argument is equally unavailing. Under Missouri law, an unambiguous insurance policy will be enforced as written. Peters v. Employers Mutual Casualty Co., 853 S.W.2d 300, 302 (Mo. banc 1993). In this case, the language used in section (c) of the "Single Loss" definition unambiguously refers to any and all acts perpetrated by the same person. Any other interpretation would reduce section (c) of the "Single Loss" definition to a nullity. It is generally accepted that "[a] construction or interpretation of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent." Dent Phelps R-III Sch. Dist. v. Hartford Fire Ins. Co., 870 S.W.2d 915 (Mo. App.1994), citing Soukop v. Employers' Liability Assur. Corporation, 341 Mo. 614, 108 S.W.2d 86 (1937).
Furthermore, although each loan involved separate loan documents, all of the customer's actions took place within the context of the floor plan arrangement. Therefore, even accepting the Plaintiff's interpretation of the definition, the forty-six counterfeit certificates of origin were still part of one common scheme to defraud the Plaintiff. Accordingly, the "Single Loss" limitation applies and the Defendant is entitled to judgment as a matter of law on the Plaintiff's claims under the Bond.
The Plaintiff, however, is entitled to judgment as a matter of law on the Defendant's Counterclaim. Simply put, no evidence has been presented indicating that the Plaintiff made false or fraudulent representations with respect to its reliance upon the certificates of origin. The Defendant's conclusory allegations are insufficient as a matter of law to withstand a motion for summary judgment. See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir.1993).
NOTES
[1] Actually, the Plaintiff's claims arise under three successive bonds issued by the Defendant between July 31, 1993 and July 31, 1995.
[2] The Defendant insists that its liability under the Bond is predicated on Insuring Agreement E, not Insuring Agreement B(1)(b). Since the Plaintiff's memorandum did not address this argument, the Court concludes that any arguments to the contrary have been abandoned. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.)(en banc), cert. denied, ___ U.S. ____, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995) ("... grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").