CHARLES J. BOSWORTH *v.* METROPOLITAN LIFE INSURANCE COMPANY

(No. 7768)

Submitted February 14, 1934. Decided March 6, 1934.

*Brown, Jackson & Knight* and *W. T. O'Farrell,* for plaintiff in error.

*J. Howard Hundley,* for defendant in error.

664

This is an action to recover benefits under two insurance policies of $1,000.00 each. One is an accident policy. The other is a life policy containing a disability clause applying to "bodily injury or disease". To the judgment entered upon a verdict in favor of plaintiff for the full amount of the policies, defendant prosecutes error.

The accident policy stipulates that payment will be made to the assured for the total and irrecoverable loss of sight of both eyes due to "violent and accidental means". The life policy containing a disability clause provides for payment of benefits in monthly installments to the amount of $1,000.00 upon due proof by the assured to the insurer that "he has become so disabled, as a result of bodily injury, or disease, as to be prevented permanently from engaging in any occupation and performing any work for compensation."

From December, 1931, until the latter part of January, 1932, plaintiff, as an employee of the Rubber Service Laboratories Company in its plant at Nitro, Kanawha County, assisted in the partial preparation of a chemical known as "V-784", as follows: Certain materials daily were placed in a large kettle and heated to a high temperature. After cooling (which caused the consistency to solidify into a hard mass), it was removed by chipping with a crow-bar or chisel. Twice weekly the accumulation was treated with acid, washed, dried, and ground into powder. Plaintiff did not participate in the grinding stage of the process. He says that about the last of January, he experienced a failing of vision, but does not say whether he suffered pain or that his eyes became inflamed. He further testifies that he consulted a doctor, February 2nd, "to see what was wrong", but fails to state what the doctor advised him. He had no further connection with the preparation of the product until June 16th and 17th, following (after an improvement of his eyes), when he ground a considerable quantity of the chemical, and dismantled and cleaned the mill he had been using. He states that on the 18th he was so blind he "could hardly tell daylight from dark". Dr. S. H. Phillips, of Charleston, who examined him, first in August and numerous times thereafter, testified that plaintiff had

suffered 90% loss of vision, due, in his opinion, to inhaling the dust from the chemical; and that because of atrophy of the optic nerves resulting therefrom, the impaired vision of plaintiff is permanent. It also appears from the testimony of Dr. Phillips and plaintiff that he is unable to distinguish objects. Plaintiff, not having worked after June 17, 1932, was in November of that year placed on a six-hour shift, at one-half his former wage, as watchman at the entrance of the chemical plant with the duty of admitting the workmen. The evidence for plaintiff tends to show that the company gave him this employment, as a matter of charity, because of his long service and the needs of himself and family.

The defense to the general disability policy is that plaintiff has not become so disabled "as to be prevented permanently from engaging in any occupation and performing any work for compensation or profit", within the meaning of the policy. Two additional defenses are set up to the claim under the accident policy, as follows: (1), The disability did not result from accidental means; and (2), the disability was caused by occupational disease.

Is plaintiff so disabled as to be prevented permanently from engaging in any occupation and performing any work for compensation or profit in contemplation of the policy? We have held that disability clauses in health and accident policies are to be given a liberal construction in favor of liability; and that, accordingly, the assured is entitled to recover if he is unable to perform substantially all of the material acts necessary to the prosecution of his occupation, or other work as specified in the policy, in the customary and usual manner. *Hetzel* v. *Ins. Co.*, 108 W. Va. 22, 150 S. E. 385; *Cody* v. *Ins. Co.*, 111 W. Va. 518, 163 S. E. 4; *Hayes* v. *Ins. Co.*, 114 W. Va. 323, 171 S. E. 824; *Molnor* v. *Ins. Co.*, 114 W. Va. 402, 171 S. E. 894. "The rule prevailing in most jurisdictions is that the 'total disability' contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties he is capable of transacting some part of his business, whatever it may be, although he is incapable

of physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the 'total disability' contemplated by the agreement is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner." 14 R. C. L. 1315. The fact that the assured may be able to perform or is actually performing some unsubstantial acts or duties in his usual employment or other work will not preclude recovery. 7 Couch on Insurance 5771; *Booth* v. *United States Fidelity & Guaranty Co.*, (N. J.) 130 Atl. 131; *McCutchen* v. *Pacific Mutual Life Insurance Co.*, (S. C.) 151 S. E. 67; *Monahan* v. *Order of Columbia Knights*, 88 Minn. 224, 92 N. W. 972; *United States Casualty Co.* v. *Perryman*, 203 Ala. 212, 82 So. 462. In *Jones* v. *Connecticut General Life Insurance Company*, decided contemporaneously herewith, we have applied the rule in favor of the assured under a group insurance policy, for the benefit of employees of an industrial corporation, providing: "If any employee shall furnish the Company with due proof that he has become totally disabled by injuries, sickness or disease, and has been continuously prevented thereby from performing any and every duty pertaining to his occupation and presumably will during his lifetime be prevented from pursuing any occupation for wages or profit, or if he has suffered the entire and irrecoverable loss of the sight of both eyes, or the loss of the use of both hands, or of both feet, or of one hand and one foot, he shall be deemed to be totally and permanently disabled, * * *." The assured in that case, a woman 49 years of age, uneducated, and accustomed to performing only manual labor, while operating a metal pressing machine, sustained an injury, necessitating amuptation of the fingers of her right hand. According to her testimony, she had thereby become incapacitated from pursuing her usual employment, which required the use of both hands, and from engaging in any other gainful occupation.

Is the cause of injury in this case comprehended by the terms of the accident policy? "Death or injury by the inhalation of poisonous or irrespirable gases, without design, intent, or expectation on the part of the insured,—that is, through accident,—is by external, violent, and accidental

means, since the gas is external, the result is unnatural, and the cause is violent. In fact, it is said that cases of death by inhaling gas are in principle, so far as being caused by external, violent, and accidental means, analogous not only to suffocation by the action of water in the lungs, but also to cases of the accidental taking of poison.'' 5 Couch on Insurance, sec. 1150. A verdict for the death of the insured, in an accident policy, from carbon monoxide, produced by an automobile, operated by him, while stalled in a mud hole, was upheld in *Miller* v. *Casualty Co.*, 110 W. Va. 494, 158 S. E. 706. The policy, there under consideration, insured against ''the effects of bodily injury caused directly, exclusively and independently of all other causes by external, violent, and accidental means.'' We see no difference in principle between injury resulting directly from the inhaling of poisonous chemical dust and that from inhaling poisonous gases.

The evidence justifying the finding that the disability of plaintiff resulted directly from inhaling the chemical dust at a definite time, it cannot be held, as a matter of law, to have been caused by occupational disease. *Jones* v. *Rinehart & Dennis Co.*, 113 W. Va. 414, 168 S. E. 482; *Conley* v. *Compensation Commissioner*, 107 W. Va. 546, 149 S. E. 666; *Industrial Commission* v. *Roth*, 98 Ohio St. 34, 120 N. E. 172, 8 A. L. R. 1463.

As already observed, judgment was entered upon the verdict for the full amount under the general disability clause in the life policy, notwithstanding the benefits thereunder were payable in monthly installments. Although the point is not raised by defendant, we cannot ignore it. The judgment is, therefore, modified to include only the installments due and payable at the time of institution of the action, and, as modified, affirmed.

*Modified and affirmed.*