UNITED STATES RADIUM CORPORATION, A BODY CORPO-
RATE, PLAINTIFF, v. GLOBE INDEMNITY COMPANY,
NEW AMSTERDAM CASUALTY COMPANY, AETNA LIFE
INSURANCE COMPANY AND AMERICAN MUTUAL LIA-
BILITY INSURANCE COMPANY. BODIES CORPORATE,
DEFENDANTS.

Decided March 14, 1935.

For the plaintiff, *Wall, Haight, Carey & Hartpence.*

For the defendants Globe Indemnity Company and Aetna
Life Insurance Company, *Collins & Corbin.*

For the defendant New Amsterdam Casualty Company,
*Edwards, Smith & Dawson.*

For the defendant American Mutual Liability Insurance
Company, *McCarter & English.*

ACKERSON, S. C. C. This action was submitted to the
court, without a jury, upon an agreed state of facts. Plain-
tiff seeks to recover from four insurance companies, or from
one or more of them, upon five liability policies, the sum
of $10,000 heretofore paid to a former employe, Helen Tuck,
and her husband, in settlement of an action for injury from
radium poisoning alleged to have been sustained by said
Helen Tuck while lawfully employed by plaintiff in its fac-
tory at Orange, New Jersey.

It appears from the stipulated facts that Helen Tuck was
employed by plaintiff from May 29th, 1917, to August 24th,
1921, in mixing certain luminous materials with adhesives

(the mixture being commonly known as radium paint), and applying said mixture to numerals and designs on watch dials and other objects, and while so employed, and in the course thereof, she "became affected with an occupational disease resulting from her employment, wherein she ingested by mouth" the mixture known as "radium paint" by placing the brushes with which she applied said paint "in her mouth for the purpose of pointing said brushes in order more readily to apply the paint, which practice extended throughout the period of her employment." Her employment terminated on August 24th, 1921, "but the presence of radium in her system was neither a direct nor indirect cause of or factor in the termination of such emloyment." There is attached to the stipulation of facts a copy of the complaint filed by Helen Tuck and her husband in their aforesaid action against the plaintiff herein, in which it is alleged that the radium paint so ingested has become impregnated in her body and "is of such an insiduous character that it did not produce the consequential injury to the health and body of the plaintiff" (Helen Tuck) "until the month of June, 1928."

It is further stipulated that the settlement of the above mentioned action for $10,000, is, for the purpose of the present action, "to have the same force and effect as a judgment in favor of said Helen Tuck and her husband rendered in a trial of the said action against the plaintiff herein."

It also appears that the plaintiff herein carried insurance against liability to its employes with the four defendant insurance companies herein covering the period Helen Tuck worked for the plaintiff, as follows: Globe Indemnity Company from November 4th, 1916, to November 4th, 1917; the New Amsterdam Casualty Company from November 4th, 1917, to November 4th, 1918, and by a renewal policy from November 4th, 1918, to November 4th, 1919; Aetna Life Insurance Company from November 4th, 1919, to August 20th, 1920, and the American Mutual Liability Insurance Company from August 20th, 1920, to September 1st, 1921.

The questions to be decided and the effect of such decisions are very carefully and exactly set forth in the stipulation of facts as follows:

"There are but two legal questions to be litigated and determined in this action. These questions are:

"*First*—Did the defendant companies, or any of them, by the terms of their respective policies, insure the plaintiff against liability to Helen Phillips (now Helen Tuck) and Walter M. Tuck, her husband, or either of them, on their claims which they made against the plaintiff herein, and sought to enforce by suit against it brought in the New Jersey Supreme Court, and removed by this plaintiff to the United States District Court for the District of New Jersey, which claims were compromised and settled before trial by the payment by plaintiff herein of the sum of $10,000 to said Helen Tuck and her husband, Walter M. Tuck. The defendants do not in this action contest the right to make said settlement, * * *.

"*Second*—If there is coverage under the said policies, what proportion of the said amount of $10,000 should legally be borne by each company?

"All other questions are eliminated from this litigation.

"That the before stated questions shall be submitted to the court in which this action is pending for decision upon the facts herein stipulated, and judgment or judgments shall be entered in accordance with the answers which said court may make to the said questions; any and all parties reserving the right to appeal from any such judgment or judgments."

There can be no doubt that all of the policies involved herein cover two kinds or types of liability which are expressed in two separate paragraphs generally referred to as insuring agreements.

The defendants insist that the loss sustained by the plaintiff in its settlement with Helen Tuck and her husband is not covered by any of the policies because they cover only such losses as are sustained by the assured (plaintiff) on account of personal injuries to its employes caused by *accidents* (whether arising under the Workmen's Compensation act (*Pamph. L.* 1911, *ch.* 95, *p.* 134; 2 *Cum. Supp. Comp. Stat., p.* 3868), at common law), and that radium poisoning is an occupational disease and not an injury by accident.

The plaintiff on the other hand contends that in these contracts of insurance the defendants undertook to protect the assured (plaintiff) against loss for all damages recovered against it by employes for all personal injuries sustained in their employment from whatever cause arising. That two kinds of personal injuries are covered by the policies. First, those contemplated in the Workmen's Compensation act, *i. e.*, loss caused by accidents, and second, all injuries to employes for which damages at common law, as distinguished from compensation under said act, are recoverable, whether arising from accidents or otherwise, and that therefore, injury by radium poisoning is covered by the policies.

It is stated in the stipulation of facts that radium poisoning is an occupational disease, and it is conceded that as such, injury therefrom was not compensable at the time these policies were in force under either section 1 or section 2 of the Workmen's Compensation act as it then stood, because said act only provided for compensation or damages to an employe for personal injury by *accident* arising out of and in the course of his employment, and it is well settled that an occupational disease is not the result of an *accident,* at least within the meaning of said act as it then stood *Liondale Bleach Works* v. *Riker,* 85 *N. J. L.* 426; 89 *Atl. Rep.* 929; *Smith* v. *International High Speed Co.,* 98 *N. J. L.* 574; 120 *Atl. Rep.* 188. Injury by radium poisoning was not made compensable under the act until the amendment of 1926. *Pamph. L.* 1926, *ch.* 31, *p.* 62.

It follows, therefore, that if these policies only cover liability for personal injuries falling under the provisions of the Workmen's Compensation act, there could be no recovery against these defendants.

But even if the coverage of these policies is not so limited, nevertheless, a careful reading of their provisions will inevitably lead to the conclusion that the coverage afforded thereby does not extend beyond liability for personal injuries sustained by *accidents* and that injuries resulting from any other cause are not covered thereby.

It is conceded that the policies cover only bodily or personal injuries sustained by employes of the assured, and that

the first insuring agreement deals exclusively with claims arising, at least under section 2 of the Workmen's Compensation act, if not, as claimed by plaintiff, under section 1 thereof as well.

The second insuring agreement appearing in the Globe Indemnity Company's policy reads (italics in all quotations ours) :

"To indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of personal injuries, * * * *accidentally* suffered, * * * during the policy period * * *, by any employe or employes of the assured who shall not have elected to accept the provisions of the said act, * * *."

Paragraph VI of the policy requires the insurer :

"To pay, on account of personal injuries to which section 2 of the said act" (Workmen's Compensation act) "applies, for medical and hospital services and medicines, subject to paragraph 14 and 14a of section 2 of said act, but on account of all other personal injuries *to which this policy applies* to pay only for such immediate surgical relief as is imperative at the time of the *accident*."

Aside from certain general provisions which are common to all the policies and which will be hereinafter noticed, it will be observed that the coverage afforded by this policy is limited to "personal injuries * * * *accidentally* suffered," which means arising out of *accidents,* as indicated by the provision last quoted, which limits the policy to "personal injuries *to which this policy applies*," and not to all personal injuries, and which indicates to what injuries the policy does not apply by further stating that the insurer will not pay for general medical and hospital services and medicines, but only for such *immediate* surgical relief "as is imperative at the time of the *accident*."

The second insuring agreement is identical in the policies of the Aetna Life Insurance Company and The American Mutual Liability Insurance Company, and, so far as pertinent, reads:

"To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account

of such injuries" (personal injuries) "to such of said employes as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada."

The coverage intended by this paragraph is controlled by paragraph VII of these policies which reads:

"This agreement shall apply only to such injuries so sustained by reason of *accidents* occurring during the policy period limited and defined as such in Item 2 of said Declarations."

The item 2 of the declarations thus referred to merely fixes the period during which the policy shall remain in force—from a specific date to a specific date.

To avoid the effect of this positive limitation of the coverage of these policies, the plaintiff contends that the only purpose and object of this paragraph is "to point to the provisions of the policies defining the policy period," and that to hold otherwise would be permitting this independent paragraph to completely override a specific contract to indemnify plaintiff against all common law liability to its employes contained in the second insuring agreement above quoted.

There are many difficulties in the way of this contention. In the first place there are other provisions in the policies, common to all under consideration, and presently to be mentioned, which control the unlimited common law liability contended for by the plaintiff. In the second place item 2 of the declarations sufficiently specifies the policy period. The purpose of the paragraph is not ambiguous, but is perfectly plain. It is intended to define the coverage of the policy as including, not all injuries, but only such injuries as arise from an *accident* occurring during the policy period, so that a finger may be put upon an event (accident) *occurring within the policy period to which* the resultant injuries may be traced.

That paragraph VII above quoted is controlling in limiting the coverage afforded by these particular policies to injuries by accidents is emphasized by the conclusions reached in the case of *Maxson* v. *New Jersey Manufacturers Casualty Insurance Co.*, 10 *N. J. Mis. R.* 1164; 162 *Atl. Rep.* 427;

and the case of *Belleville Enameling and Stamping Co.* v. *United States Casualty Co.* (1932), 266 *Ill. App.* 586; *certiorari* denied, 266 *Ill. App. XV* 586. Both of these cases involved the interpretation of policies practically identical with the two here under discussion, and each contained a paragraph identical with paragraph VII above quoted, and the conclusion reached was that this paragraph limited the coverage of the policies to injuries by accidents.

In the course of the opinion in the case of Belleville Enameling and Stamping Co., *supra,* the court said:

"This policy does not in any part of the written contract contain any reference to an injury caused otherwise than by accident. Paragraph 7 'that this agreement shall apply only to such injuries so sustained by reason of accidents occurring during the policy period limited and defined as such in item 2 of said declarations,' is, to our minds, of compelling influence in the interpretation of the policy on the question at issue in this case.

"In order to give the policy the meaning insisted upon by appellee, it would in effect require the elimination or rewriting of paragraph 7 so as to make a new contract.

"Courts can only examine contracts as they are written and it seems plain to us that the policy covers what it purports to cover, that is—injuries sustained by reason of accidents."

The two policies issued by the New Amsterdam Casualty Company are identical and in order to define the scope of the coverage it is well to notice both of the insuring agreements which provide that the company agrees as follows:

"To indemnify the Assured * * * against any payment under the Compensation Law as specified in the endorsement hereto attached on account of bodily injuries *accidentally* suffered while this policy is in force, * * * by any employe or employes of the assured * * *.

"To indemnify the said Assured against loss from liability imposed by law upon the Assured for damages on account of bodily injuries or death, suffered by said employe or employes of the assured who are not covered by the said Compensation Law."

That this latter paragraph refers to the type of injuries by accident, referred to in the preceding paragraph is emphasized by paragraph "E" of the "Conditions" of the policy which provides:

"Condition E. If the assured carries other insurance, not issued by this company, against loss or expense arising from an *accident* covered by this policy, the assured shall not be entitled to recovery from the company a larger proportion of the entire loss and expense than the amount hereby insured bears to the total amount of his insurance."

Furthermore, these policies contain a paragraph designated "Condition A," which is found in similar form in all of the policies involved in this action, and which bears a very important role in defining the coverage contemplated by all of them, viz.:

"Condition A. Upon the occurrence of an *accident,* the Assured shall give immediate written notice thereof with the fullest information obtainable at the time to the Executive office of the Company * * *. If a claim is made on account of such *accident* the Assured shall give like notice thereof with full particulars."

It must also be noticed that nowhere in any of these policies is there any specific reference to an injury caused otherwise than by accident.

It would seem, therefore, that sufficient has been said to show that the policies here involved only cover injuries to employes sustained by accidents.

It remains, however, to consider whether an occupational disease, such as radium poisoning is conceded by the stipulation to be, is an injury by *accident* within the meaning of these policies.

As already observed, it is conceded, in view of the specific holding in *Liondale Bleach Works v. Riker, supra,* and *Smith* v. *International High Speed Co., supra,* that an occupational disease was not compensable under the Workmen's Compensation act as it stood at the time these policies were in force, for the reason that an occupational disease is not the result of an *accident* within the meaning of said act as it then stood. The plaintiff insists, however, that the word "accident" as

used in the Workmen's Compensation act, and by our courts in construing and applying that act, has a narrower meaning than when it is applied to a common law right of action based on negligence. It is claimed that when defining "accident," in compensation cases, our courts uniformly qualify its meaning by adding the words "within the meaning of the act," or words of like import. Reference is made to *Liondale Bleach Works* v. *Riker, supra,* and *Smith* v. *International High Speed Co., supra,* for such qualification and the reason for it.

In the first of the above cited cases the court said, *inter alia:*

"The English courts seem at last to have settled that where no specific time or occasion can be fixed upon as the time when the alleged accident happened, there is no injury by accident within the meaning of the act. This seems a sensible working rule, especially in view of the provisions of the statute requiring notice in certain cases within fourteen days of the occurrence of the injury—a provision which must point to a specific time."

It will be noted that the reason last given for the rule is not the exclusive reason therefor. But even if it were, it applies with equal force in similarly limiting the coverage afforded by all of the policies involved in this action, because each of the policies contains the paragraph hereinabove quoted, providing in substance that "upon the occurrence of an accident," the assured "shall give immediate written notice thereof," to the insurer. Surely, if these policies only cover injuries by accidents, the last mentioned paragraph points to a "specific time or occasion" when the alleged injury must have happened in order to bring it within the coverage provided by these policies.

The plaintiff overlooks the fact that we are not immediately concerned with the word "accident" as applied generally to a cause of action arising out of an occurrence due to negligence, but with the specific question of whether the terms of certain contracts of insurance are sufficiently broad to comprehend injury due to an occupational disease, where the coverage is limited to injuries by accident, and where notice

of the occurrence of an accident is required to be given to the party to be held liable.

Indeed, there would seem to be no good reason why an injury by accident should receive a narrower meaning when appearing in the provisions of the Workmen's Compensation act, than when appearing as the basis of coverage in an insurance policy where immediate notice of the occurrence of the accident is required to be given to the insurer.

At the close of the opinion in the case of *Liondale Bleach Works* v. *Riker, supra,* the court said:

"There may indeed be compensation awarded for resulting conditions where you can once put your finger on the accident from which they result; but the ground of the action fixed by the statute is the injury by accident, not the results of an indefinite something which may not be an accident."

So here, the ground of an action under these policies must be bodily injury due to an accident, and not the result of an indefinite something which may not be an accident.

It is to be noticed that the plaintiff has expressly stipulated that the injury which forms the basis of the present claim is "an occupational disease resulting from her" (Helen Tuck's) "employment, * * *; which disease has recently become known as radium poisoning."

In the case of *Smith* v. *International High Speed Co., supra,* the claim was based upon an industrial disease arising from breathing fine particles of metallic and mineral substances which were thrown into the air as the result of the plaintiff's work. In the course of the opinion Mr. Justice Bergen said:

"I think a disease, such as is described in the complaint, is not the result of an accident, and that a recovery for injuries therefrom is not confined to the Workmen's Compensation act."

It would seem, therefore, that by admitting that Helen Tuck's injury is the result of an occupational disease, the plaintiff has put the present claim squarely within the foregoing observation of Mr. Justice Bergen, and that the injury complained of is not the result of an accident.

Furthermore the plaintiff's claim is not covered by any of

these policies, for the further reason that there is no proof before the court of any personal injury by accident within the specified policy period of any one of the policies here involved.

Each one of these policies limits liability thereunder to *injuries occurring during the policy period*. The stipulation of facts expressly states that Helen Tuck was employed by plaintiff from May 29th, 1917, to August 24th, 1921, in work consisting of mixing radium paint and applying it to watch dials and other articles. During the entire term of her employment Mrs. Tuck was engaged in the work described above, "and while so employed she, in the course of her employment, and while doing said work, became affected with an occupational disease resulting from her employment, wherein she ingested by mouth, a mixture commonly known as 'radium paint;' which disease has recently become known as radium poisoning." Her employment ended on August 24th, 1921, "but the presence of radium in her system was neither a direct or indirect cause of, or factor in the termination of such employment." As hereinbefore mentioned, the complaint filed by Helen Tuck and her husband against the plaintiff in the previous action which was settled, alleged that the radium paint so ingested was of "such an insiduous character that it did not produce the consequential injury to the health and body of the plaintiff" (Helen Tuck) "until the month of June, 1928."

There is nothing else before the court to assist in fixing the time of Helen Tuck's injury. If we fix it at the time when the "consequential injury" became apparent in the month of June, 1928, it is long after the coverage period of any of the policies in question. If we attempt to bring it within the time she was employed we have nothing more substantial upon which to rest than the statement in the stipulation that "while so employed she, in the course of her employment, and while doing said work, became affected with an occupational disease * * *." Just when she became affected during the period of her employment, whether during a particular day, month or year, does not appear. Countless assumptions could be made as to when she

was harmed, but they would be nothing more substantial than assumptions. Furthermore the settlement of $10,000 evidently covers all damages from the alleged injuries, and there is no factual basis from which to ascertain what proportion of said amount should be borne by each company. The facts stipulated furnish no more basis for saying that the effect of the occupational disease was spread evenly over the whole period of her employment, than for saying she was affected only during the first week or year of her employment or the last week or year thereof. There is nothing before the court to settle such questions.

For the reasons hereinbefore stated the first legal question propounded in the stipulated facts, viz., whether any of the policies here involved insured the plaintiff against liability on the compromised claims made against it by Helen Tuck and her husband, must be answered in the negative.

This answer to the first question makes it unnecessary to answer the second question further than to say that no part of the $10,000 settlement should be borne by any of the defendants herein.

The court, therefore, finds in favor of the defendants and against the plaintiff, and a judgment of no cause of action may be accordingly entered.